PIPE LININGS, INC., Appellant,

v.

INPLACE LININGS, INC., Appellee.

No. 16239.

Court of Civil Appeals of Texas.

Fort Worth.

June 30, 1961.

Rehearing Denied Sept. 22, 1961.

Carter, Gallagher, Jones & Magee, Charles Gallagher and Ben T. Warder, Jr., Dallas, for appellant.

H. C. Ray and B. T. Johnson, Fort Worth, for appellee.

BOYD, Justice.

This is a case of alleged unfair competition. Pipe Linings, Inc., sued Inplace Linings, Inc., for a permanent injunction restraining the defendant from using the words "in place" in its corporate name because the plaintiff alleged that the defendant, by adopting a corporate name so similar to plaintiff's corporate name, had confused and deceived the public, including potential customers, to the extent that a person intending to deal with the plaintiff would, by mistake, deal with the defendant; and that the plaintiff, by extensive advertising and sales promotion, had acquired a secondary meaning in the words "in place". The case was tried to a jury, and a judgment notwithstanding the verdict was rendered for the defendant. The plaintiff appeals.

The jury found that the corporate name of the defendant is so similar to that of the plaintiff that a person using such care as the public in general may be expected to exercise would, by mistake, deal with one corporation when he intended to deal with the other; that the words "in place" have acquired a secondary meaning in association with the services sold by the plaintiff; that the defendant had not conducted its business activities in such a manner that a

person using such care as the public in general may be expected to exercise would by mistake deal with the defendant when he intended to deal with the plaintiff; and that the defendant had done everything reasonably necessary in the conduct of its business to distinguish the sale of its services from the services offered by the plaintiff.

Both corporations are engaged in the business of reconditioning pipe in place by cleaning and inserting cement mortar lining, thereby preventing leaks and lessening damage by rust and corrosion. Since about 1950 the plaintiff has been in the business in several western states and in British Columbia, serving its customers from its California headquarters. In 1950 it began preliminary sales promotion work in Texas, and in 1954 opened an office in Midland, Texas. In 1958 it established an office in Fort Worth. Early in 1960 the defendant was incorporated under the laws of Texas, with offices in Forth Worth, with much of its business being done in this state.

The plaintiff has expended a considerable amount of time and money in its advertising and sales promotion. In its brochures, letters, and other advertising media it has given prominence to the words "in place" to bring to the attention of prospective customers the method it uses in pipe reconditioning. We think it was shown that a very considerable portion of the public which has occasion to use that type of service had become familiar with the method used by the plaintiff from its advertisements and other sales promotion. The defendant also has made prominent use of the words "in place" in its advertising and contacts.

But the plaintiff and the defendant are not the only concerns engaged in pipe reconditioning by the "in place" method which have made extensive use of the words "in place" in their sales promotion. This method has been in use in Australia since 1922, and in pipe of large diameter it has been used in the United States since 1935. Prior to the defendant's operations, the Centriline Corporation was operating in Texas and was making prominent use of the words "in place" in its advertising. United Concrete Pipe Corporation, which does the same kind of work, operates in Texas and throughout the western states and features the words "in place" in its brochures. Internal Pipeline Maintenance Company of Odessa, Texas, uses "in place" in its advertising. One of the defendant's witnesses testified that Flexible Pipeline Cleaning Company, National Water Mains Cleaning Company, B. W. Perovich Construction Company, and Pittsburg Pipe Cleaning Company make extensive use of the words "in place" in their sales promotion. He added: "There are lots of places in this country where all of the people engaged in this type of work use the words 'in place'."

The plaintiff contends that it was error to render judgment non obstante veredicto because the finding that the defendant's corporate name is so similar to that of the plaintiff that a person using such care as the public in general may be expected to use would deal with one party where he intended to deal with the other, and the finding that the words "in place" have acquired a secondary meaning in association with the services sold by the plaintiff, are supported by the evidence; and that the other answers of the jury are immaterial and do not preclude a judgment for the plaintiff. We cannot agree with the plaintiff's contentions, and think the judgment should be affirmed.

In the absence of fraud, a name merely descriptive of the business carried on cannot be exclusively appropriated as against others who can and do use the name with equal truth, even if the words have acquired a secondary meaning. 87 C.J.S. Trade-Marks, Trade-Names, and Unfair Competition § 109, p. 376. Where no exclusive right to use a word or term exists, a charge of fraud in the use of it by another may be sustained only by actual proof.

Goidl v. Advance Neckwear Co., 132 Tex. 308, 123 S.W.2d 865; Dry Ice Corporation of America v. Louisiana Dry Ice Corp., 5 Cir., 54 F.2d 882; United Brotherhood of Carpenters and Joiners of America, Carpenters Union No. 213 v. Carpenters and Joiners Union of Texas, Tex.Civ.App., 110 S.W.2d 1209. "Words in common use are common property of the people, and no exclusive right to the use of such words can be acquired by adopting them as a trademark, unless they be used in an arbitrary or fanciful sense, and not in their ordinary signification." Alff v. Radam, 77 Tex. 530, 14 S.W. 164, 9 L.R.A. 145.

In Avnet v. Texas Centennial Central Exposition, Tex.Civ.App., 96 S.W.2d 685, 687, it is said:

"The only claim of unfair competition in the instant case is in the use of the word 'Centennial' by appellants in their name, 'Centennial Room-Rental Association.' It cannot be said that the word 'Centennial' can be exclusively used by appellee as the name for its incidental business of securing rooms for the housing of visitors to the Fair. Appellee never copywrited such name, either as a trade-mark or registered it as an exclusive name for its business. In fact, it could not have done so." See, also, Trappey v. McIlhenny Co., 5 Cir., 281 F. 23; Standard Paint Co. v. Trinidad Asphalt Manufacturing Co., 220 U.S. 446, 31 S.Ct. 456, 55 L.Ed. 536; Goodyear's India Rubber Glove Manufacturing Co. v. Goodyear Rubber Co., 128 U.S. 598, 9 S.Ct. 166, 32 L.Ed. 535; 41–A Tex.Jur., p. 447, Sec. 36.

■ We do not believe there is any evidence of probative force to show that the words "Inplace" and "Pipe" in the corporate names of the parties are so similar as to mislead any person in the exercise of the slightest diligence so as to cause him to deal with one corporation when he intended to deal with the other. The plaintiff does not object to the defendant's use of the words "Linings" and "Inc." in its corporate name. These words, being the second and third words in the defendant's name, are exactly the same as the second and third words in the plaintiff's name. Neither does the plaintiff object to defendant's displaying prominently the words "in place" in its advertising, by which the defendant informs its prospective customers and the public generally of the method used by it in reconditioning pipes. The only similarity which it finds objectionable is that between the words "Inplace" and "Pipe", which words we think are patently dissimilar.

In support of its contention that an injunction will lie to prohibit the use of the word "Inplace" in the corporate name of "Inplace Linings, Inc." because of its alleged similarity to the corporate name "Pipe Linings, Inc.", the plaintiff strongly relies on Harrelson v. Wright, Tex.Civ.App., 339 S.W.2d 712, 713, error refused, where it was held that it was a question of fact whether the similarity between the names "Abilene Linen Service Company" and "Abilene Linen Supply" was reasonably calculated to cause customers to deal with one concern when they intended to deal with the other. The trial court granted a temporary injunction restraining the use of the name "Abilene Linen Service Company" and on appeal it was held that the judgment preserving the status quo was authorized. In the opinion no consideration was given to the similarity, if any, between the words "Service" and "Supply", it being merely held that the evidence was sufficient to support the conclusion that the words "Abilene Linen", which were the first two words in the name of each concern, had acquired a secondary meaning in association with the business of the plaintiff, Abilene Linen Supply.

■ We have seen no authority holding that a party may preempt, and appropriate exclusively, or restrain the use of by another, words or phrases which are the common property of many who are engageo

in the same industry. "* * * the true basis of secondary meaning may be said to be that the word or phrase to be given such meaning has been used so long and exclusively by one producer with reference to his articles that the word has come to mean that the article is his product." Dixiepig Corp. v. Pig Stand Co., Tex.Civ. App., 31 S.W.2d 325, 328. Here no such situation is shown or claimed to exist. Accordingly, we think the court properly rendered judgment denying the injunction sought.

The judgment is affirmed.